1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8    MARQUETTA M.,

9                            Plaintiff,

10           v.

11   COMMISSIONER OF SOCIAL SECURITY,

12                           Defendant.

CASE NO. C19-5799-BAT

**ORDER REVERSING AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS**

13           Plaintiff appeals the denial of her application for Supplemental Security Income and

14   Disability Insurance Benefits. She contends the ALJ erred by improperly evaluating the medical

15   evidence, improperly discounting her testimony, ignoring lay testimony, improperly assessing

16   residual functional capacity ("RFC"), and committing step five error by relying on an incomplete

17   RFC. Dkt. 12, at 2. As discussed below, the Court **REVERSES** the Commissioner's final

18   decision and **REMANDS** the matter for further administrative proceedings under sentence four

19   of 42 U.S.C. § 405(g).

20                                    **BACKGROUND**

21           Plaintiff alleges disability since December 31, 2015. Tr. 39–40. In a February 2019

22   decision, the ALJ found that plaintiff had the severe impairments of left shoulder impingement

23   with tendinitis, diabetic neuropathy, major depressive disorder, generalized anxiety disorder,

1  posttraumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder, and borderline

2  personality disorder. Tr. 19–20. The ALJ determined that plaintiff has the RFC to perform light

3  work with additional physical, mental, and social limitations. Tr. 21. The ALJ found that plaintiff

4  was not disabled because at step five of the sequential evaluation she could perform jobs that

5  exist in significant numbers in the national economy. Tr. 25–26.

6  **DISCUSSION**

7      The Court finds that the ALJ failed to support the decision with substantial evidence and

8  committed harmful legal error by improperly discounting medical opinions and plaintiff's

9  testimony that demonstrated plaintiff's marked limitations in (a) performing activities within a

10  schedule, maintaining regular attendance, and being punctual within customary tolerances

11  without special supervision, (b) maintaining appropriate behavior in a work setting, and

12  (c) completing a normal work day and work week without interruptions from psychologically

13  based symptoms. The Court declines to address plaintiff's seriatim summaries of the medical

14  evidence that are unmoored from meaningful argumentation. The challenged lay testimony may

15  be addressed by the ALJ in the first instance on remand.

16      **1. Medical Evidence**

17      Because plaintiff's applications were filed in 2018, the ALJ evaluated the medical

18  opinions in accordance with 20 C.F.R. § 404.152c and § 416.920c. The ALJ considers the

19  medical opinions with reference to supportability, consistency, relationship with the claimant,

20  specialization, and other factors. 20 C.F.R. §§ 404.152c(c), 416.920c(c). The most important

21  factors are supportability and consistency. 20 C.F.R. §§ 404.152c(a) & (b)(2), 416.920c(a) &

22  (b)(2). The Court finds that the ALJ did not cite substantial evidence and committed harmful

23

legal error when discounting the examining medical opinions of Terilee Wingate, Ph.D., William

Wilkinson, Ed.D., and James Parker, M.D.

### a. Drs. Wingate and Wilkinson

Dr. Wingate examined plaintiff in August 2016 and Dr. Wilkinson examined her in July

2018. Tr. 1063–71; Tr. 1298–1304. Both opined that plaintiff had marked limitations in

(a) performing activities within a schedule, maintaining regular attendance, and being punctual

within customary tolerances without special supervision; (b) maintaining appropriate behavior in

a work setting; and (c) completing a normal work day and work week without interruptions from

psychologically based symptoms. Tr. 1065–66; Tr. 1300. Drs. Wingate and Wilkinson also both

opined that plaintiff overall suffered a marked impairment in the ability to work based on the

combined impact of all diagnosed mental impairments. Tr. 1066; Tr. 1300. The ALJ discounted

the opinions of Drs. Wingate and Wilkinson, as well as the August 2016 reviewing opinion of R.

Renee Eisenhauer, Ph.D., *see* Tr. 1072–75, because they relied "too heavily upon claimant's

subjective presentation and did not adequately consider the evidence suggesting the claimant was

not giving her best effort, which is consistent with the claimant's longitudinal non-compliance."

Tr. 25 (citations omitted). Neither of the ALJ's proffered reasons is supported by substantial

evidence or is consistent with the correct legal standards.

First, there is no indication that either Dr. Wingate or Dr. Wilkinson relied too heavily on

plaintiff's subjective presentation at the expense of clinical observations and professional

expertise. Dr. Wingate observed that plaintiff's mood was tearful/depressed and that her affect

range was labile. Tr. 1066–67. She administered a mental status exam and found plaintiff not to

be within normal limits in memory as well as in insight and judgment. Tr. 1067. Dr. Wingate

diagnosed major depressive order, unspecified anxiety disorder, and borderline personality

disorder based on symptoms recounted by plaintiff, supported by her medical history, and accepted by the ALJ in determining severe impairments. Tr. 1064–65. Two years later, Dr. Wilkinson diagnosed major depressive disorder, unspecified anxiety disorder, and borderline personality disorder based on clinical observations, a review of Dr. Wingate's report and DSHS social worker notes, and symptoms recounted by plaintiff that are consistent with the medical history and the ALJ's conclusion regarding severe impairments. Tr. 1299–1300. "[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Commissioner of SSA*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008). Moreover, mental health "[d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Here Drs. Wingate and Wilkinson gave credence to plaintiff's subjective account but also compared that account with observed symptoms and exercised their professional discretion. Had Drs. Wingate and Wilkinson ignored plaintiff's subjective presentation, which is well-supported by the record, and relied solely on "objective" observations, they could hardly be called mental-health practitioners at all.

Second, the record contradicts the ALJ's supposition that Drs. Wingate and Wilkinson did not adequately consider the evidence suggesting the claimant was not giving her best effort. Dr. Wingate administered the Beck Depression Index ("BDI-II") to plaintiff and concluded that her score showing great severity "usually reflects negative impression management." Tr. 1064; *see* Tr. 1069–70 (BDI-II test). Dr. Wingate also, however, administered the Rey Fifteen Item Memory Test and noted that plaintiff's 15 out of 15 indicated that she was *not* malingering. Tr. 1067–68. Dr. Wingate was well-aware of plaintiff's accurate self-report that she had attended

counseling only "spora[d]ically over the last 8 to 10 years." Tr. 1063. Similarly, Dr. Wilkinson stated that in responding to a mental status examination plaintiff appeared to respond "[p]urposely fair to poor at remote aspects of her behavior," Tr. 1301, and appeared to want to play down psychological symptoms in lieu of physical symptoms due to a concern that her last disability application had been denied because it did not demonstrate sufficient physical symptoms, Tr. 1299. Dr. Wilkinson too was well-aware that plaintiff "has seen some counselors, sporadically over the years, but finds it too difficult to talk about the past, as well as to connect with the providers, is becoming angry, irritable, moody, and apparently quits." Tr. 1298. As the Ninth Circuit has noted, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation and quotation marks omitted). Here Drs. Wingate and Wilkinson acknowledged that plaintiff's sporadic attention to mental-health care was an all-too-common response that did not undermine their evaluations about plaintiff's ability to work. Moreover, no mental-health professional in the record has suggested that plaintiff has demonstrated a greater capacity to work during those periods where she was more compliant with mental-health treatment, particularly with respect to the domains opined by Drs. Wingate and Wilkinson to constitute marked limitations.

The ALJ discounted the examining opinions of Drs. Wingate and Wilkinson without citing substantial evidence and by applying a harmfully erroneous legal standard.

### b. Dr. Parker

In June 2018, Dr. Parker examined plaintiff and diagnosed, alongside diabetes, major depressive disorder, severe without psychosis; and trauma and stress-related disorder by history. Tr. 668–71. Dr. Parker's functional assessment was that plaintiff would not be able to interact

1   with coworkers, supervisors, or the public because of her depression, confusion, and

2   concentration problems; she would have difficulty completing tasks; her thought process is slow;

3   she has lapses in concentration; her poor sleep and severe depression would interfere with

4   attendance; and she would not be able to manage stress in the workplace. Tr. 671. The ALJ

5   discounted that functional assessment because Dr. Parker did not fully account for plaintiff's lack

6   of engagement and long history of non-compliance with treatment, and did not account for "the

7   records demonstrating the claimant's ongoing job search, which suggest she is not as limited as

8   alleged." Tr. 24–25 (citation omitted). The ALJ's reasons for discounting Dr. Parker's examining

9   opinion were not supported by substantial evidence and showed a misapplication of the correct

10  legal standard.

11        First, nothing in Dr. Parker's opinion suggests that he based his functional assessment on

12  plaintiff's compliance or lack of compliance with treatment, and there is no medical suggestion

13  beyond the ALJ's that plaintiff's lack of compliance with mental-health care suggested that she

14  was functioning at a higher level than how she was assessed. Dr. Parker noted that plaintiff was a

15  "poor historian," that she "has had psychiatric treatment on and off since she was 20 years of

16  age," and had been receiving counseling and medications at BHR for three years. Tr. 669.

17  Throughout the opinion Dr. Parker noted plaintiff's lack of engagement and issues with

18  reliability: plaintiff was fuzzy on details—e.g., under the subheading Past Psychiatric History Dr.

19  Parker noted that plaintiff "says she was in the hospital a couple of times but could not give

20  further details," and "She indicates that she does not know if her ADHD diagnosis was made

21  during childhood or as an adult"—and declined to provide details about aspects of her mental

22  condition—e.g., "She says she has PTSD related to abuse and sexual assault but will not say

23  anything further about that." *Id.*

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 6

1    Second, a factfinder could not reasonably infer from the opinion that had Dr. Parker

2  accounted for plaintiff's ongoing job search that he would have assessed plaintiff with less

3  severe limitations. The relevant question is not whether plaintiff *wanted* to work— there is no

4  dispute that plaintiff has made unsuccessful attempts to work since the alleged onset date—but

5  whether plaintiff has the *capacity* to work. Dr. Parker noted that plaintiff's longest employment

6  duration was one year and that she was last employed in January 2018, i.e., more than two years

7  after the alleged onset date and five months before her examination by Dr. Parker.

8    The ALJ discounted the examining opinion of Dr. Parker without citing substantial

9  evidence and by applying a harmfully erroneous legal standard.

10   **2.  Plaintiff's Testimony**

11   Similarly, the Court finds that the ALJ failed to cite clear and convincing reasons for

12  discounting plaintiff's testimony about her mental-health limitations. *See Rollins v. Massanari*,

13  261 F.3d 853, 859 (9th Cir. 2001). Although the ALJ concluded that plaintiff's mental-health

14  testimony was undermined by non-compliance with treatment and attempts to work, Tr. 22–24,

15  the record does not support that more consistent treatment compliance and failed work attempts

16  demonstrated plaintiff's capacity to perform activities within a schedule, maintain regular

17  attendance, and be punctual; maintain appropriate behavior in a work setting; and complete a

18  normal work day and work week.

19   The ALJ accurately noted that plaintiff reluctantly attended therapy, showed sporadic

20  attendance, and had a history of not taking medication for diabetes, depression, and anxiety. Tr.

21  23. These points are not, however, disputed. The Ninth Circuit has noted that "we do not punish

22  the mentally ill for occasionally going off their medication when the record affords compelling

23  reason to view such departures from prescribed treatment as part of claimants' underlying mental

afflictions." *Garrison v. Colvin*, 759 F.3d 995, 1018 n. 24 (9th Cir. 2014). As discussed earlier, Drs. Wingate, Wilkinson, and Parker acknowledged plaintiff's history of non-compliance with treatment and medication yet concluded without qualifiers that plaintiff did not have the capacity to perform full-time in a normal work environment due to mental-health limitations. The ALJ cited no record evidence demonstrating that plaintiff's mental functioning improved to an extent that would enable performing full-time work when she was maximally compliant with treatment. Although the ALJ concluded that the record did not support plaintiff's testimony that she was unable to "stomach" her medications because they cause her to throw up, Tr. 24, chronic nausea and vomiting have been the cause for plaintiff's hospitalization and treatment with anti-nausea medication since at least 2008. *See, e.g.*, Tr. 354, 364, 383, 395, 414, 447, 452, 456, 463, 468, 669, 705, 767, 798, 802, 867, 937, 967, 971, 989, 1101, 1124, 1145, 1159, 1211, 1220. True, plaintiff has stated her reluctance to take antidepressants because "she did not want to wait a month for them to begin working." *See, e.g.*, Tr. 621.[1] Nonetheless, the record demonstrates that the one medication she did not skip and demanded regularly, and sometimes impatiently, was anti-nausea medication. Consistent with her hearing testimony that she "can't stomach" psychiatric medications because of "throwing up," Tr. 60, plaintiff informed Dr. Parker that "[s]he has trouble keeping medicines down because she throws up very often," Tr. 669. There is no conflict between plaintiff's difficulty in stomaching her medications and her stated desire not to take them.

---

[1] The ALJ cited plaintiff's statements made during a May 2017 emergency room visit. Tr. 23 (citing Tr. 624). On that visit, plaintiff had been brought to the emergency room by her coworkers after having had a panic attack and having made statements suggesting suicidal ideation. Tr. 621.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 8

As discussed earlier, the ALJ was unable to explain why plaintiff's unsuccessful work attempts demonstrated a mental capacity to work that exceeded the recommendations of Drs. Wingate, Wilkinson, and Parker. Although the ALJ suggested that plaintiff was more capable of working than she attested because she acknowledged that treatment would be beneficial and showed a *desire* to work, no mental health practitioner has suggested that this desire alone was sufficient to eliminate the mental barriers that impeded successfully doing so.

The ALJ failed to cite substantial evidence and committed harmful legal error by discounting plaintiff's testimony about the mental limitations on her capacity to perform full-time work.

**3.   Other Issues**

The Court declines to address plaintiff's nearly four-page summary of medical evidence that ends with the conclusion that every shred of evidence supports the opinions of Drs. Wingate, Wilkinson, and Parker. *See* Dkt. 12, at 8–11. It should be self-evident that any reexamination of the opinions of Drs. Wingate, Wilkinson, and Parker will involve evaluating whether their opinions are consistent with other medical evidence. The Court need not address the ALJ's omission of discussing the lay testimony by SSI Facilitator Cindy Harbaugh so this question may be resolved in the first instance on remand.

"Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Commissioner of SSA,* 659 F.3d 1228, 1235 (9th Cir. 2011). The Court finds that there remains an unresolved and unexplained conflict in the record between the examining opinions of Drs. Wingate, Wilkinson, and Parker and the reviewing, non-examining

opinions of Steven Haney, M.D. *See* Tr. 99–100, 144. The remand is on an open record so that supplemental evidence may be submitted, if necessary, to shed light on this conflict.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the medical and testimonial evidence that plaintiff was markedly limited in (a) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision, (b) maintaining appropriate behavior in a work setting, and (c) completing a normal work day and work week without interruptions from psychologically based symptoms; supplement the record with testimony and medical reports if necessary; hold a new hearing; and issue a new decision that reevaluates the medical and testimonial evidence and engages the five-step sequential process from RFC forward.

DATED this 27th day of April, 2020.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge